UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| QFS Transportation, LLC, | ) |
| Plaintiff, | ) Case No.: 1:21-cv-00770 |
| vs. | ) Judge Michael R. Barrett |
| Alexandra Murphy, *et al.*, | ) |
| Defendants. | ) |

**TEMPORARY RESTRAINING ORDER**

This matter is before the Court on the Motion for Temporary Restraining Order and Preliminary and Permanent Injunction and Memorandum in Support filed by Plaintiff QFS Transportation, LLC. (Doc. 6). As explained below, a temporary restraining order will be entered.

**I.      BACKGROUND**

Plaintiff QFS Transportation, LLC ("QFS") is a Nevada limited liability company and registered to do business in Ohio, with its principal place of business located here in Hamilton County, Ohio. (Doc. 1 (¶ 1)). Defendant Alexandra Murphy ("Murphy") is a resident of Garden City, Georgia and is a principal and officer of co-Defendant AAVC Elite Enterprises, LLC ("AAVC"). (*Id.* (¶ 2)). AAVC is a Georgia limited liability company with its principal place of business located in Garden City, Georgia. (*Id.* (¶ 3)). Defendant Mercury Transportation, Inc. d/b/a/ World Logistics USA, LLC ("Mercury") is a New Jersey corporation with its principal place of business located in Allentown, New Jersey. (*Id.* (¶ 4)).

1

QFS is a federally registered motor carrier that, among other things, provides third-party logistics services throughout the United States. (*Id.* (¶ 10)). QFS engages independent contractors as agents to perform services for existing QFS customers in a given local market, as well as to develop additional business there. (*Id.* (¶ 11)). On July 22, 2020, QFS and AAVC entered into an Agreement for Regional Business Development ("Agreement") that included sections governing Exclusivity[1], Non-Competition[2], and Non-Solicitation[3]. (*Id.* (¶ 19)). Among its duties, AAVC was to develop and solicit freight transportation exclusively for QFS in the southeastern region of the United States. (*Id.* (¶ 21)). Murphy personally and expressly guaranteed AAVC's obligations to QFS under the Agreement. (*Id.* (¶ 20); Doc. 1-1 PAGEID 23 & (¶ 2(E))). QFS alleges that it terminated its relationship with AAVC and Murphy on September 21, 2021 and, thereafter, AAVC and Murphy entered into a relationship with Defendant Mercury—a direct competitor of QFS—to perform the same services as it performed for QFS. (Doc. 1 (¶¶ 31–33)). On November 19, 2021, QFS sent a cease-and-desist letter to both Murphy and AAVC. (Doc. 1-2). QFS sent a letter to Mercury the same date. (Doc. 1-3). By return correspondence and through counsel, Mercury denied any wrongdoing. (Doc. 1-4).

On December 10, 2021, QFS filed a Verified Complaint for Temporary Restraining Order, Injunctive Relief, and Damages against Murphy/AAVC for breach of contract[4]; against Murphy/AAVC and Mercury for violations of Ohio's Uniform Trade Secrets Act

---

[1] (Doc. 1-1 (¶ 7)).

[2] (Doc. 1-1 (¶ 8)).

[3] (Doc. 1-1 (¶ 9)). A section governing Confidentiality also is included. (*See id.* (¶ 10)).

[4] (Doc. 1 Count I (¶¶ 46–53), Count II (¶¶ 54–59)).

2

("OUTSA"), Ohio Rev. Code § 1333.61–.69[5]; against Mercury for tortious interference with a contract (the Agreement between Murphy/AAVC and QFS)[6]; and against Murphy/AAVC and Mercury for tortious interference with business relationships (between QFS and its (current and prospective) agents, owner-operators, drivers, and customers)[7].[8] As required under the local rules,[9] QFS filed a separate Motion for Temporary Restraining Order and Preliminary and Permanent Injunction. (Doc. 6).

## II. ANALYSIS

**<u>Jurisdiction and Venue.</u>** The Court is satisfied that it has subject-matter jurisdiction over this action because there is complete diversity of citizenship between the parties and QFS alleges[10] that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a), (c). In addition, per the terms of the Agreement, Murphy and AAVC

---

[5] (Doc. 1 Count III (¶¶ 60–72)).

[6] (Doc. 1 Count IV (¶¶ 73–77)).

[7] (Doc. 1 Count V (¶¶ 78–84)).

[8] (Doc. 6 PAGEID 59).

[9] *See* S.D. Ohio Civ. R. 65.1(b).

[10] (Doc. 1 (¶ 7)).

consented to personal jurisdiction in the Southern District of Ohio and waived any venue objections. (Doc. 1 (¶ 8) & Doc. 1-1 (¶ 29(A)[11]).[12]

**Local Rule 65.1 Telephone Conferences.**[13] The Court has conducted four informal preliminary telephone conferences related to QFS's Motion for Temporary Restraining Order. Murphy and AAVC did not appear for the January 3, 2022 conference. However, in the second conference held on January 7, 2022, attorney Brent J. Savage Sr. (of the Savannah, Georgia firm Savage, Turner, Pinckney & Savage) appeared for Defendant Murphy and indicated she was in the process of engaging local counsel. (01/07/2022 Minute Entry).[14] In the third conference held on January 12, 2022, attorney Savage agreed that Murphy and AAVC would respond in opposition to QFS's Motion by

---

[11] Paragraph 29(A) of the Agreement is titled, "Governing Law, Venue, and Severability" and reads as follows:

> Contractor and Guarantor(s) understand and acknowledge that Carrier is organized under Nevada law and has its headquarters, and conducts substantial business and operations, in Ohio where it is registered to do business. Contractor further acknowledges and agrees that its performance under this Agreement is due and owing to Carrier, and that a substantial portion of the duties and obligations of the Parties are to be performed in, Hamilton County, Ohio. Accordingly, this Agreement shall be governed by Ohio law, without reference to Ohio's principles of conflicts of laws. **The Parties voluntarily consent and agree to the exclusive jurisdiction of the** state or **federal court**s **located in Hamilton County, Ohio, over any action, suit, or proceeding arising out of or relating to this Agreement. The Parties further waive any objection to the venue of any such action, suit, or proceeding brought in any such court, and waive any claim that any such action, suit, or proceeding has been brought in an inconvenient forum.**

(Doc. 1-1 PAGEID 30 (emphasis added)).

[12] Attorney Brendan Collins (of the Washington, D.C. firm GKG Law, P.C.) waived service of a summons and complaint on behalf of Defendant Mercury. (Doc. 15); *see* Fed. R. Civ. P. 4(d). Mercury's answer (or Rule 12 motion) is due on or before February 8, 2022. (*See* Doc. 15 (docket text)).

[13] "In most cases, the Court will not hear or rule on any motion for a temporary restraining order or a preliminary injunction until after the Court holds an informal preliminary conference with all parties to determine what additional proceedings are necessary." S.D. Ohio Civ. R. 65.1(a).

[14] Attorney Savage also agreed to accept service on behalf of both Defendant Murphy and Defendant AAVC. (*See* Docs. 9, 10). Their answers are due on or before February 8, 2022. (*See* Docs. 9, 10 (docket text)).

January 19, 2022. (01/12/2022 Minute Entry). Attorneys from the local firm Keating Muething & Klekamp PLL ("KMK") entered their appearance on behalf of Murphy/AAVC on January 19, 2022. (Docs. 12, 13). The same day they moved for a three-day extension of time to respond to QFS's Motion, which the Court granted. (Doc. 11 & 01/19/2022 Notation Order (extending the deadline to January 24, 2022)). Two days later, on January 21, 2022, the KMK attorneys filed a Motion to Withdraw as counsel for Murphy/AAVC "because Defendants have expressly instructed undersigned counsel, in writing, not to proceed in representation of them." (Doc. 14). The Court held a fourth conference on January 25, 2022, at which time it advised that the Motion to Withdraw would be granted and a ruling on QFS's Motion for Temporary Restraining Order would be forthcoming. (01/25/2022 Minute Entry & 01/25/2022 Notation Order). To date, Defendants Murphy and AAVC have not filed a response in opposition to QFS's Motion and no other attorney has entered an appearance on their behalf.

**Standard of Law.** The standard for obtaining a temporary restraining order and the standard for obtaining a preliminary injunction are the same. *See Doe v. Univ. of Cincinnati,* No. 1:15-cv-600, 2015 WL 5729328, at *1 (S.D. Ohio Sept. 30, 2015) (citing *Reid v. Hood,* No. 1:10 CV2842, 2011 WL 251437, at * 2 (N.D. Ohio Jan. 26, 2011)). In determining whether to grant or deny a temporary restraining order or a preliminary injunction, a court must consider four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir.

2014) (internal quotation marks and citation omitted). These four considerations are factors to be balanced, not prerequisites that must be met. *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997).[15] "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) (citation omitted).

The purpose of a temporary restraining order is to preserve the status quo so that a reasoned resolution of a dispute may be had. *See, e.g.*, *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996) (citing Fed. R. Civ. P. 65). Accordingly, in addition to reviewing the movant's likelihood of success on the merits, a court also should focus on the threat of irreparable injury. *Id.* at 226; *Reid*, 2011 WL 251437, at *2 (citing *Motor Vehicle Bd. of Calif. v. Fox,* 434 U.S. 1345, 1347 n.2 (1977)).

**Success on the Merits.** As examined below, this factor weighs in favor of a temporary restraining order.[16]

**Breaches of contract.** QFS alleges that, per the terms of the Agreement, Murphy/AAVC cannot, directly or indirectly: (1) compete with QFS[17] or solicit or hire QFS's owner-operators or other agents (among others)[18] for one year after termination;

---

[15] A court need not make specific findings on each factor if fewer factors dispose of the issue. *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399–400 (6th Cir. 1997).

[16] QFS brings five substantive claims in total. The Sixth Circuit has held that if a plaintiff can show a likelihood of success on the merits of **any** of the claims, an injunction may issue, subject to consideration of the other factors." *See Hoover Transp. Servs., Inc. v. Frye*, 77 F. App'x 776, 781 (6th Cir. 2003) (per curiam) (emphasis added). Regardless, the Court will consider the merits of all five.

[17] (Doc. 1-1 (¶ 8)).

[18] (Doc. 1-1 (¶ 9(C)).

6

(2) divert business away from QFS for three years after termination[19]; and (3) use or disclose QFS's confidential and proprietary information and trade secrets (in perpetuity)[20]. QFS further alleges that that Murphy/AAVC have breached the Agreement by: (1) allowing Murphy, an officer/director of AAVC, to work for competitor Mercury[21] and to solicit at least two QFS agents to work for competitor Mercury[22]; and (2) using QFS's "Confidential Information" and trade secrets to benefit themselves and Mercury[23].

"A covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if the restraint is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public." *Raimonde v. Van Vlerah*, 42 Ohio St. 2d 21, 325 N.E.2d 544, at syl. ¶ 2 (Ohio 1975). "A covenant not to compete which imposes unreasonable restrictions upon an employee will be enforced to the extent necessary to protect an employer's legitimate interests." *Id.*, 325 N.E.2d 544, at syl. ¶ 1. Guided by these parameters, the Ohio Supreme Court later modified a non-competition agreement from two years to one and a non-solicitation agreement from a lifetime to just one year. *Rogers v. Runfola & Assocs., Inc.*, 57 Ohio St. 3d 5, 565 N.E.2d 540 (Ohio 1991).[24]

---

[19] (Doc. 1-1 (¶ 9(B)).

[20] (Doc. 1-1 (¶ 10(E)).

[21] (Doc. 1 (¶ 49)).

[22] (Doc. 1 (¶¶ 49–50). The two agents identified are Altoria Walker and A & T Integrity Logistics LLC along with Denesia Jackson and Jacksongirl Trucking LLC. (*See id.* (¶ 49)).

[23] (Doc. 1 (¶¶ 62–67)).

[24] Ohio law governs the Agreement "without reference to Ohio's principles of conflicts of laws." (Doc. 1-1 (¶ 29(A)).

7

QFS acknowledges that its relationship with Murphy/AAVC is one of principal/agent rather than employer/employee. (Doc. 6 PAGEID 61; *see* Doc. 1-1 (¶ 2)). Nevertheless, it urges the Court to apply this rationale because it has the same "legitimate interest [as does an employer] in limiting not only a former employee's ability to take advantage of personal relationships the employee has developed while representing the employer to the employer's established client, but also in preventing a former employee from using his former employer's customer lists or contacts to solicit new customers." *UZ Engineered Prods. Co. v. Midwest Motor Supply Co., Inc.*, 147 Ohio App. 3d 382, 770 N.E.2d 1068, at ¶ 39 (Ohio App. 10th Dist. 2001) (citing *Runfola*). In addition, like an employer, QFS "has a legitimate interest in preventing a former employee from using the skill, experience, training, and confidential information the former employee has acquired during the employee's tenure with his employer in a manner advantageous to a competitor in attracting business, regardless of whether it was an already established customer of the former employer." *Id.*

Based on analogous Ohio employment law, the Court finds that the Agreement is valid considering the time limitations within and that QFS's allegations state a breach thereof. Accordingly, the Court determines that QFS has a strong likelihood of success on the merits of its breach of contract claims against Murphy/AAVC.

**OUTSA violations.** To prevail on a misappropriation of trade secrets claim under OUTSA, a plaintiff must show: (1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret. *Handel's Enterprises, Inc. v. Schulenburg*, 765 F. App'x 117, 122 (6th Cir. 2019) (citing *Heartland Home Fin., Inc. v. Allied Home Mortg. Capital Corp.*, 258 F. App'x

860, 861 (6th Cir. 2008)). "Actual or threatened misappropriation may be enjoined." Ohio Rev. Code § 1333.62(A) (emphasis added).[25]

"The question of whether something is a trade secret is a question of fact to be determined by the trier of fact upon the greater weight of the evidence." *Hoover Transp. Servs., Inc. v. Frye*, 77 F. App'x 776, 782 (6th Cir. 2003) (per curiam) (citing *Valco Cincinnati, Inc. v. N & D Machining Serv., Inc.*, 24 Ohio St. 3d 41, 492 N.E.2d 814 (1986)). Ohio defines a trade secret as "information" that both:

> (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Handel's Enterprises,* 765 F. App'x at 122 (citing Ohio Rev. Code § 1333.61(D)). Additionally, courts should consider the following factors in determining whether an item constitutes a trade secret:

> (1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, *i.e.*, by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*Id.* (citing *Heartland Home Fin.,* 258 F. App'x at 861–62); *State ex rel. Plain Dealer v. Ohio Dept. of Ins.*, 80 Ohio St. 3d 513, 687 N.E.2d 661, 672 (1997). While no single factor is

---

[25] In the employment context, OUTSA expressly provides that, "[n]o employee of another, who in the course and within the scope of his employment receives any confidential matter or information, shall knowingly, without the consent of his employer, furnish or disclose such matter to any person not privileged to acquire it." Ohio Rev. Code § 1333.81.

dispositive, a business must take "active steps" to maintain secrecy "in order to enjoy **presumptive** trade secret status." *Columbus Bookkeeping & Bus. Servs., Inc. v. Ohio State Bookkeeping, L.L.C.*, No 11AP-227, 2011-Ohio-6877, at ¶ 19, 2011 WL 6938340, at *4 (Ohio App. 10th Dist. Dec. 30, 2011) (cleaned up) (emphasis added).

QFS alleges that it grants its agents access to certain types of confidential and proprietary information, to include: "its software; financial and operating policies and procedures; current and prospective customer data and profiles; credit information about current and prospective customers, contractors, and suppliers; business and development strategies; pricing lists; owner-operator lists; customer lists and contact information; and purchasing information[.]" (Doc. 1 (¶ 15)). QFS further alleges that it takes "overt and deliberate steps" to protect this information "by limiting the number of individuals who are permitted to access it and requiring those who do have access to it to agree to contracts containing terms of confidentiality." (Doc. 6 PAGEID 65 (citing Doc. 1 (¶ 18)).

This Court has previously held that "confidential information concerning sales, service and pricing strategies" may constitute trade secrets under Ohio law "if they derive independent economic value from not being generally known and ascertainable by proper means, and are the subject of efforts reasonable under the circumstances to maintain their secrecy." *AK Steel Corp. v. Miskovich*, No. 1:14cv174, 2014 WL 11881030, at *6 (S.D. Ohio Mar. 3, 2014) (collecting cases).

In addition, "[c]lient lists may be trade secrets." *Columbus Bookkeeping*, 2011-Ohio-6877, at ¶ 21, 2011 WL 6938340, at *4 (citing *Al Minor & Assoc., Inc. v. Martin*, 117 Ohio St. 3d 58, 881 N.E.2d 850, at ¶¶ 24, 27 (Ohio 2008)). But, again, trade secret status

is warranted only when the information contained within the client list "is not generally known or readily ascertainable to the public." *Id.* (quoting *State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Envtl. Prot. Agency*, 88 Ohio St. 3d 166, 173, 724 N.E.2d 411, 418 (Ohio 2000)). Thus, a client list entitled to trade secret status "typically includes not only the name of the business but information not available to the public, such as the name of a contact person, a non-public telephone or cell phone number, an email address, and other pertinent business data known only because of the client relationship." *Id.* (citing *Al Minor*). All this information, together, *is* the value in a client list. *Id.* A business generally "has spent many hours of labor and interaction to develop the information reflected in the list, and disclosure to a competitor grants the competitor a tremendous advantage in not having to spend the time and money to develop that same information." *Id.*

Defendants Murphy and AAVC agreed in writing not to disclose or use QFS's confidential and proprietary information to the detriment of QFS. (*See* Doc. 1-1 (¶¶ 10A–E)). Defendants Murphy and AAVC also agreed in writing that entry into an agency or business relationship with a QFS competitor while under restriction results in a *presumption* that Murphy/AAVC has disclosed and used QFS's confidential information to unfairly compete against QFS. (*See id.* (¶ 11D)). QFS alleges that Murphy/AAVC are now agents of its direct competitor Mercury and, on Mercury's behalf, is attempting to divert QFS's agents and current (and prospective) customers to Mercury. (Doc. 1 (¶¶ 31–33, 64)). Neither Murphy nor any other principal of AAVC disavowed an intent to violate the confidentiality terms set forth in the Agreement upon receipt of QFS's cease-and-desist letters. Neither did Mercury. Hence, the Court determines that QFS has a

11

strong likelihood of success on the merits of its OUTSA claims against Murphy/AAVC and Mercury.

**Tortious interference.** QFS alleges that Mercury has interfered with the Agreement between it and Murphy/AAVC. QFS also alleges that Murphy/AAVC and Mercury interfered with its business relationships with current (and prospective) agents, owner-operators, drivers, and customers.

Ohio recognizes the tort of interference with a contract. *Kenty v. Transam. Premium Ins. Co.*, 72 Ohio St. 3d 415, 650 N.E.2d 863, at syl. ¶ 1 (Ohio 1995). Its elements are: (1) existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of the contract's breach; (4) lack of justification; and (5) resulting damages. *Id.*, 650 N.E.2d 863, at syl. ¶ 2. QFS has alleged that it put Mercury on notice of the Agreement between it and Murphy/AAVC, to the extent it was unaware of this agency relationship, prior to filing suit.[26] QFS has further alleged that Mercury—by entering into and maintaining an agency relationship with Murphy/AAVC—intentionally procured breach of the Agreement and has provided no justification for its actions.[27]

A lack of privilege or justification is a "crucial" element of this tort. *Inwood Vill., Ltd. v. Christ Hosp.*, No. C-110730, 2012 WL 3104407, at *4, 2012-Ohio-3434, at ¶ 19 (Ohio App. 1st Dist. Aug. 1, 2012). Interference is justified only "if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract[.]" *Id.* (quoting Restatement (Second) of Torts § 773 (1979)). Mercury's reply to QFS's

---

[26] (Doc. 1 (¶¶ 74, 75) & Doc. 1-3).

[27] (Doc. 1 (¶ 76) & Docs. 1-4, 1-5).

cease-and-desist letter, attached to QFS's Verified Complaint, asserts no such interest. (*See* Doc. 1-4). "Fair competition" may serve to justify interference, but only when the contract in question is terminable "at will." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St. 3d 171, 179–80, 707 N.E.2d 853, 860–61 (Ohio 1999). The Agreement between QFS and Murphy/AAVC is not terminable at will[28] and, as noted, the section prohibiting competition survives for one year after the relationship ends (for any reason)[29]. With this anticipated claim of justification by Mercury defeated, the Court determines that QFS has a strong likelihood of success on the merits of its tortious interference with a contract claim against Mercury.

Ohio also recognizes the tort of interference with a business relationship, which "requires that a defendant interfere with the relationship of the plaintiff and a third party." *Mehlman v. Cincinnati Children's Hosp. Med. Ctr.*, No. 1:20-cv-813, 2021 WL 4430631, at *11 (S.D. Ohio Apr. 26, 2021) (quoting *Kuvedina, LLC v. Cognizant Tech. Sols.*, 946 F. Supp. 2d 749, 757 (S.D. Ohio 2013)).[30] Its elements are: (1) existence of a business relationship; (2) the wrongdoer's knowledge of the relationship; (3) an intentional interference causing a breach or termination of the relationship; and (4) resulting damages. *Id.* (quoting *Kuvedina*, 946 F. Supp. 2d at 756)). But if a defendant and the third party are in a business relationship with one another, "they are considered to have

---

[28] (*See* Doc. 1-1 (¶ 13)).

[29] (See Doc. 1-1 (¶ 8)).

[30] "Tortious interference with contract and tortious interference with business relations differ primarily in that tortious interference with business relations includes intentional interference with a **prospective** contractual relationship not yet reduced to contract." *Zarwasch-Weiss v. SKF Economos USA, Inc.*, Nos. 1:10-cv-01327, 1:10-cv-01548, 2012 WL 194515, at *12 (N.D. Ohio Jan. 12, 2012) (citing *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co., Inc.*, 148 Ohio App. 3d 596, 604, 774 N.E.2d 775, at ¶ 23 (Ohio App. 3d Dist. 2002)) (emphasis added).

a qualified privilege to affect one another's affairs." *Zarwasch-Weiss v. SKF Economos USA, Inc.*, Nos. 1:10-cv-01327, 1:10-cv-01548, 2012 WL 194515, at *12 (N.D. Ohio Jan. 12, 2012) (citing *Chandler & Assoc., Inc. v. America's Healthcare Alliance, Inc.*, 125 Ohio App. 3d 572, 583, 709 N.E.2d 190, 197 (Ohio App. 8th Dist. 1997)). This privilege is defeated upon a showing of "actual malice," which, in this context, means "unjustified or improper interference." (*Id.*).

QFS alleges that Mercury and Murphy/AAVC have "knowingly solicited a relationship with at least two of [its] agents, Denesia Jackson [and Jacksongirl Trucking LLC] and Altoria Walker [and A & T Integrity Logistics LLC]." (Doc. 1 (¶¶ 82, 83); *see id.* (¶ 49)). At this early juncture, there is no evidence before the Court that Murphy/AAVC or Mercury previously had a business relationship with Jackson and Walker or that their interference was otherwise justified. Thus, the Court determines that QFS has a strong likelihood of success on the merits of its tortious interference with business relations against Mercury and Murphy/AAVC.

**Irreparable Injury.** This factor also weighs in favor of a temporary restraining order.

"To demonstrate irreparable harm, the plaintiffs must show that . . . they will suffer actual and imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). Harm is irreparable if it cannot be fully compensated by monetary damages. *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002).

As discussed, QFS alleges that Murphy/AAVC already have begun to contact QFS's agents—using QFS's confidential and proprietary information—to influence them

to end their relationship with QFS and begin one with competitor Mercury. These contacts are obviously intended to divert business from QFS for the benefit of Mercury and present the risk that AAVC/Murphy will continue to use and disclose QFS's confidential and proprietary information to unfairly compete with QFS. QFS argues that the harm that will result is irreparable because "once a trade secret is revealed, it cannot be undone." (Doc. 6 PAGEID 70).

Reference to Ohio employment law is again instructive. "[C]ourts have found that injunctive relief is warranted by establishing that an employee gained intimate knowledge of an employer's trade secrets and confidential information, and has begun working for a competitor in a substantially similar capacity." *Prosonic Corp. v. Stafford*, 539 F. Supp. 2d 999, 1007 (S.D. Ohio 2008) (applying Ohio law). "[T]he loss of fair competition that results from the breach of a non-competition covenant is likely to irreparably harm an employer[ ]" as well. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992); *Dayton Superior Corp. v. Yan*, No. 3:12-cv-380, 2012 WL 5497804, at *8 (S.D. Ohio Nov. 13, 2012) ("courts have found that a mere violation of a covenant not-to-compete is an irreparable injury") (citation omitted). And, as to Mercury, irreparable injury "generally results from a competitor's misappropriation of confidential customer information." *Koorsen Fire & Security, Inc. v. Westerfield*, No. 1:17-cv-845, 2018 WL 3549850, at *9 (S.D. Ohio May 22, 2018) (quoting *Dayton Superior Corp.*, 2012 WL 5497804, at *8). The Court is satisfied that the harm alleged by QFS is actual and imminent, such that the restraining order requested is necessary to protect QFS from suffering the further use or disclosure of its confidential and proprietary information.

**Harm to Others/Public Interest.**  These final two factors likewise weigh in favor of a temporary restraining order.

The balance of harms favors QFS over Murphy/AAVC and Mercury.  *See generally Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982).  Murphy/AAVC will be temporarily restrained from using and disclosing QFS's confidential and proprietary information, as well as acting as agent to competitor Mercury.  To the extent they suffer any harm, that harm is undermined by the fact that they signed the Agreement willingly and with knowledge of its restrictions.  *Koorsen*, 2018 WL 3549850, at *9.  And, because Mercury has no plausible right to QFS's trade secrets, Mercury cannot claim injury.  *See id.*, at *10.  Finally, while not downplaying the importance of freight transportation logistics, no significant public interest surrounds this case.  *Id.*  To the extent the public has any interest, it is to ensure that reasonable contracts are enforced.  *Id.* (citing *Prosonic*, 539 F. Supp. 2d at 1008 ("upholding reasonable contracts is generally in the public interest"); *Blakeman's Valley Office Equip., Inc. v. Bierdeman*, 152 Ohio App. 3d 86, 786 N.E.2d 914, at ¶ 39 (Ohio App. 7th Dist. 2003) (preserving sanctity of contractual relations and preventing unfair competition, by enforcing restrictive covenants against former employees, traditionally recognized as being in the public interest).

**Bond.**  Fed. R. Civ. P. 65(c) requires the posting of a bond when a temporary restraining order is issued.[31]  QFS requests that the Court, in an exercise of discretion, dispense with this requirement.  (Doc. 6 PAGEID 71–73 (citing, *inter alia*, *ABX Air, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, No. 1:16-cv-1096, 2016 WL 6893847, at *6 (S.D.

---

[31] "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).

16

Ohio Nov. 23, 2016) (citing *USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 100 (6th Cir. 1982)))). QFS explains that "[w]hen there is no evidence that an injunction will harm the defendant[s], courts typically exercise their discretion to deny a bond." (Doc. 6 PAGEID 72 (citing *Koorsen*, 2018 WL 3549850, at *11 (citations omitted))).

The relief requested here will restrain Murphy and AAVC from doing what they contractually agreed not to do and Mercury from what the common law prohibits. Thus, the Court sees no obvious harm to any of the Defendants at this early stage of the proceedings. In addition, QFS alleges that Murphy and AAVC owe QFS $114,108.87 (plus interest), an amount QFS states would (more than) offset any damages that Murphy and AAVC might incur if the Court later concludes it entered this restraining order in error. (Doc. 6 PAGEID 72–73; *see* Fed. R. Civ. P. 65(c)).

In its discretion, the Court finds that QFS need not post a bond.

## III. CONCLUSION

For the foregoing reasons, QFS's Motion (Doc. 6) is **GRANTED IN PART**, to the extent it seeks a temporary restraining order; the portion of QFS's Motion (Doc. 6) seeking a preliminary and permanent injunction, however, is **HELD IN ABEYANCE**.

Accordingly, **IT IS ORDERED** that Defendants Alexandra Murphy and AAVC Elite Enterprises, LLC are temporarily restrained from: (1) providing services, directly or indirectly, to any person or entity that is engaged in intermodal shipping, third-party logistics, freight brokerage, truck brokerage, supply-chain management, or related services that competes with QFS in the southeastern United States, specifically Defendant Mercury Transportation, Inc. d/b/a/ World Logistics USA; (2) directly or indirectly soliciting QFS's agents, employees, customers, and prospective customers, on

behalf of themselves or any other individual or entity; (3) directly or indirectly interfering in QFS's business relationships with its agents, owner-operators, and drivers; and (4) disclosing or using in any manner, whether directly or indirectly, QFS's confidential and proprietary information and trade secrets.

**IT IS FURTHER ORDERED** that Defendant Mercury Transportation, Inc. d/b/a World Logistics USA is temporarily restrained from: (1) directly or indirectly assisting Defendants Alexandra Murphy and AAVC Elite Enterprises, LLC in directly or indirectly soliciting QFS's agents, owner-operators, and drivers; and (2) directly or indirectly interfering in QFS's business relationships with its agents, owner-operators, and drivers.

This Temporary Restraining Order is effective upon entry and expires 14 days thereafter unless dissolved earlier or extended by the Court.[32] Any bond requirement is waived.

Counsel for QFS shall serve Defendants Alexandra Murphy and AAVC Elite Enterprises, LLC with a copy of this Temporary Restraining Order. *See* Fed. R. Civ. P. 65(d)(2). Counsel for QFS shall also email a copy of this Temporary Restraining Order to attorney Brent J. Savage Sr. (of the Savannah, Georgia firm Savage, Turner, Pinckney & Savage).

---

[32] "The order expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension." Fed. R. Civ. P. 65(b)(2). The time of entry is captured in the Notice of Electronic Filing receipt.

19

A separate notice will issue setting a telephone conference to discuss the pending Motion for Preliminary Injunction.

**IT IS SO ORDERED.**

/s/ *Michael R. Barrett*
Michael R. Barrett, Judge
United States District Court